UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: Capitol Bancorp, Ltd., *et al.*,

      Debtors.

_____/

Vikaran Ghei and Michael Zaitzeff,         Civil Action No. 14-12874
                                             Honorable Sean F. Cox

      Appellants,

v.                                          Bankruptcy Case No. 12-58409
                                             Honorable Marci B. McIvor

Capitol Bancorp, Ltd. And Financial
Commerce Corporation,

      Appellees.

_____/

## <u>OPINION & ORDER</u>

      This is a bankruptcy appeal.  Appellants Vikaran Ghei and Michael Zaitzeff filed a

Notice of Appeal, appealing the Bankruptcy Court's "Order Disallowing Proof of Claim No.

899-1 Filed On Behalf of Michael Zaitzeff and Proof of Claim No. 900-1 Filed on Behalf of

Vikaran Ghei [Docket Entry No. 847]."  The parties have briefed the issues and this Court held a

hearing on December 4, 2014.  For the reasons set forth below, this Court AFFIRMS the

bankruptcy court's order disallowing the claims.

## FACTS AND PROCEDURAL BACKGROUND

      On June 28, 2012, Capitol Bancorp, Ltd., the Debtor at issue in this appeal ("the

Debtor"), entered into written "Short-Term Employment Agreements" (the "Employment

Agreements") with Appellants-Claimants Michael Zaitzeff and Vikaren Ghei ("the Claimants").

(Appellants' Appx., Ex. A to Tabs 1 & 2).

1

The Employment Agreements provided that each of the Claimants would be paid pursuant to the following terms: 1) they would each receive "an amount in cash equal to the sum of: (a) $325,000 as a corporate restructuring fee; and (b) $425,000.00 as a capital restructuring fee (collectively, the 'Restructuring Fees'); and 2) an amount equal to 1.5% of any new money raised by the company or raised by the company's subsidiaries."  (Emp. Agmts. at 1).  But both of the Employment Agreements expressly provided:

> *Payment of all amounts set forth in sub-paragraphs (1) and (2) are contingent upon the successful execution of an equity capital raise in the context of a bankruptcy*, and the Company shall pay such amounts as soon as such equity capital is received by the Company. The Company agrees to assume this agreement to the fullest degree possible in the context of any bankruptcy proceeding or plan, whether the plan or another plan of reorganization, and ensure that the capital raise fee is paid under any bankruptcy plan pursuant to Section 1129(a)(4) of Title 11 of the United States Code or as an administrative expense of the company's bankruptcy estate, if possible. To the extent that payment under a bankruptcy plan pursuant to Section 1129(a)(4) of Title 11 of the United States Code or as an administrative expense, the Company shall, nevertheless, remain obligated to pay the capital raise fee to the employee as a pre-petition claim.

(*Id*.) (emphasis added).

Both of the Employment Agreements, which were executed on June 28, 2012, also provide that they:

> shall remain in effect for an initial term of ninety (90) days (the "End Date") and for whatever additional term thereafter which may be expressly agreed to in writing between the Employee and the Company.  The Company and Employee acknowledge and agree that if the Company and a Prospect execute a letter of intent, term sheet or definitive agreement regarding a Transaction prior to the End Date, the terms of this Agreement shall be extended until the earlier of closing of a Transaction between Prospect and the Company and the cessation of negotiations between the Company and Prospect regarding a Transaction.  The Company and Employee agree that the Company's obligation to pay the Restructuring Fees as provided in this Agreement shall survive any termination of this Agreement and the Company shall remain obligated to pay the Restructuring Fee.

(*Id*. at 2).

On August 9, 2012, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Docket Entry No. 1 in Case No. 12-58409).  On that Petition Date, the Debtor also filed its original prepackaged plan of reorganization, which was premised on a substantial infusion of new capital by an equity investor.

On May 22, 2013, however, the Debtor filed an Amended Disclosure Statement. (Docket Entry No. 436 in Case No. 12-58409).   It explained that "as part of the Chapter 11 Cases, the Debtors proposed an initial *restructuring* plan. Under the Initial Plan, new capital funding would have been infused from outside investors.  That capital was needed to recapitalize the Company and its non-debtor subsidiary banks, which have been suffering from varying degrees of undercapitalization.  As part of the Initial Plan, a lead investor would have made a significant equity investment in the Company.  That investment would have rendered the Initial Plan feasible and likely resulted in its confirmation. However, that lead investor ultimately decided not to proceed with its investment.  When other investors could not be found, the Initial Plan was withdrawn."  (*Id*. at 21-22) (emphasis added).

On July 16, 2013, the Debtor filed an Amended Joint Liquidating Plan (Docket Entry No. 523).  Article VIII, Section A related to assumed contracts and leases and stated that the "filing of this Plan constitutes a motion by the Debtors to assume, as of the Effective Date, certain contracts and leases, "except for any Executory Contract or Unexpired Lease that, prior to the Effective Date . . .  previously expired or terminated pursuant to it own terms."  (*Id*. at 35).

On September 26, 2012 – 90 days after they were executed – the Employment Agreements expired by their terms.

On January 29, 2014, the bankruptcy court confirmed the Debtor's plan of

reorganization.  It was confirmed as a *liquidating* plan and it provided for a sale of the Debtor's

remaining assets to Talmer Bancorp, Inc.  (Docket Entry No. 785)

On March 19, 2014, the Claimants each filed a claim for $750,000.00.  (Appellants'

Appx. at Tabs 1 & 2).  Claimants sought payment of those claims as an administrative expense

claim.  The Claimants alleged they were entitled to payment of those claims pursuant to 11

U.S.C. § 503 and § 507(a).

On April 15, 2014, the Debtor filed objections to both of the claims filed by Claimants.

(Appellants' Appx., at Tabs 12 & 13).  Claimants each responded, in writing, to the objections,

filing both Answers to the Objections and Memoranda of Law in support of their positions.

(Appellants' Appx., at Tabs 16 &17).  The bankruptcy court scheduled a hearing on the

objections to the claims for June 3, 2014.

Meanwhile, on May 22, 2014, Claimants each filed a motion seeking leave to conduct

limited discovery in connection with the objections to their claims.  (Appellants' Appx. at Tabs

14 & 15).  Those motions asked the bankruptcy court to allow Claimants to depose two

individuals whose testimony they asserted was "critical to the resolution of the Claim

Objections."

At the request of Claimants, the bankruptcy court held a hearing, on an expedited basis,

on Claimants' motions for discovery.  The bankruptcy court held that hearing on May 30, 2014.

Although a separate hearing on the objections to the claims had been set for June 3, 2014, Judge

McIvor advised the parties at the May 30, 2014 hearing that the June 3, 2014 would be cancelled

as it would be unnecessary.   Judge McIvor explained during the May 30, 2014 hearing that in

4

order to rule on Claimants' motions seeking discovery, she had to determine if Claimants had

established cause for the discovery they requested, which in turn required her to analyze the

nature of the claims and the objections to them.  As a result, Judge McIvor ended up ruling on

both the discovery motion and the objections to Appellants' claims at the May 30, 2014 hearing

and cancelling the June 3, 2014 hearing.  Judge McIvor disallowed the claims.

Claimants filed a Notice of Appeal, appealing the Bankruptcy Court's "Order

Disallowing Proof of Claim No. 899-1 Filed On Behalf of Michael Zaitzeff and Proof of Claim

No. 900-1 Filed on Behalf of Vikaran Ghei [Docket Entry No. 847]."  The Bankruptcy Court's

Order at issue stated, in its entirety:

> THIS MATTER having come before the Court upon the Objections
> (together, the "Objections") of the Debtors [Docket Nos. 818 and 819] to the
> proof of claim of Vikaran Ghei against Debtor Capitol Bancorp Ltd. [Claim No.
> 899-1] and the proof of claim of Michael Zaitzeff against Debtor Capitol Bancorp
> Ltd. [Claim No. 900-1] (together, the "Claims"); and the Court having reviewed
> and considered each of the Claims, the Debtors' Objections, the Employee
> Claimants' Answer to Debtors' Objection to Proof of Claim No. 899-1 of Michael
> Zaitzeff [Docket Entry No. 836], the Employee Claimants Answer to Debtors'
> Objection to Proof of Claim No. 900-1 of Vikaran Ghei [Docket Entry No. 837]
> and the Debtors' Omnibus Reply to Answers to Debtors' Objections to Proofs of
> Claim of Vikaran Ghei and Michael Zaitzeff [Docket Entry No. 841], and the
> arguments of counsel for the Debtors and the Employee Claimants made at a
> hearing conducted on May 30, 2014; and the Court having concluded that it is
> appropriate and in the best interests of the Debtors' estates, their creditors and
> other parties in interest to grant the relief requested in the Objections and to
> disallow the Claims in their entirety; and the Court having concluded that no
> further notice of hearing on the Objections or the Claims is necessary or required;
> IT IS HEREBY ORDERED THAT, for the reasons stated on the record at
> the hearing conducted on May 30, 2014:
> 1.    The Objections are sustained in their entirety.
> 2.    The Claims are disallowed, with prejudice, pursuant to section 502(b) of
>        the Bankruptcy Code and shall be expunged from the claims registry in
>        this case.
> 3.    The Court retains jurisdiction with respect to matter arising from or
>        related to the implementation of this Order.

(Docket Entry No. 1 at Pg ID 9-10). Judge McIvor did not issue a written opinion, but rather, set

forth the reasons for her ruling on the record at the May 30, 2014 hearing.

Judge McIvor's reasons for her ruling are set forth in the following portion of the

transcript of the May 30, 2014 hearing:

> MR. MCCORMICK: Your Honor, I think that, you know, we've hashed it out. I think your ruling is going to be clear. I don't think anything I'm going to say is going to change that. We do maintain that there was a capital raise to the subsidiary banks which triggered the restructuring fee under the employment agreement. The employment agreement was assumed under the bankruptcy plan, and these claims should be allowed. And I think we've followed procedurally the requirements for a contract cure claim that was assumed under the plan. I don't believe that the contract expired by its terms because of the survivorship language in the contract, and these claims should be allowed.

> THE COURT: Thank you very much, Mr. McCormick. The Court is prepared to issue a ruling. As I indicated before I started, I read every pleading that was filed, including the debtor filed an omnibus reply to the answers to debtor's objections to the proofs of claim. I read that. I have thoroughly reviewed every document that was cited, most specifically, of course, the initial employment agreement, which was superseded by the employment agreement that was dated June 28, 2012. I've read those. I spent a great deal of time reviewing the original proposed plan and the amended liquidating plan, the disclosure statement, and, of course, I'm very, very familiar with the facts of this case because I was the judge on the case, and there were multiple hearings over the course of the year and a half which resulted in the liquidation of the debtor's assets, and the debtor, of course, was not able to restructure and retain any of its assets. The debtor no longer is operational. Its assets were all liquidated either because of possession of the assets by the FDIC or the banks that could be capitalized by a purchaser were -- and were desirable by purchasers were sold.
> With all that background, the matter before the Court is the motion of Vikaran Ghei and Michael Zaitzeff hereinafter referred to as the claimants, for limited discovery from debtors. For the following reasons, the motions are denied.
> The facts are as follows. On June 28th, 2012, Capitol Bancorp, Ltd., hereinafter referred to as debtor, entered into a short-term employment agreement with Michael Zaitzeff and Vikaran Ghei, again, hereinafter referred to as the claimants. There was a prior employment agreement between the parties, but it was completely superseded, and nobody really disputes that it was superseded by the June 28, 2012, agreement. The claimants have argued that there were some material changes, but, again, it's undisputed that there were material changes, and the reasons for those changes are not relevant to this Court's ruling.

Those employment agreements provided that the claimants would be paid pursuant to the following terms:  one, they would receive an amount of cash equal to the sum of $325,000 as a corporate restructuring fee, and (b), $425,000 as a capital restructuring fee, collectively called the restructuring fees; and, two, there was a provision in the employment agreement that provided for a 1.5-percent payment of any new money raised by the company or raised by the company's subsidiaries. Basically, if money was raised, there was going to be this additional compensation paid to the claimants.

The employment agreement further provided, quote, "Payment of all amounts set forth in subparagraphs 1 and 2 are contingent upon the successful execution of an equity capital raise in the context of a bankruptcy, and the company shall pay such amounts as soon as such equity capital is received by the company. The company agrees to assume this agreement to the fullest degree possible in the context of any bankruptcy proceeding or plan, whether the plan or another plan of reorganization, and ensure that the capital raise fee is paid under any bankruptcy plan pursuant to Section 1129(a)(4) of Title 11 of the United States Code or as an administrative expense of the company's bankruptcy estate, if possible. To the extent that payment under a bankruptcy plan pursuant to Section 1129(a)(4) of Title 11 of the United States Code or as an administrative expense, the company shall, nevertheless, remain obligated to pay the capital raise fee to the employee as a pre-petition claim."

It's important to note that those conditions are all in the same paragraph, which means to me it is absolutely unambiguous that the obligation to pay could only be triggered and was contingent upon the successful execution of an equity capital raise.

Other relevant provisions of the short-term employment agreement provide, quote, "The employee acknowledges that during the period of this agreement, the company may make arrangements with other persons for the presentation of prospective candidates to the company regarding the sale of the company's securities and that the company may also directly or through other intermediaries seek such potential candidates. It is expressly understood between the company and the employee that the rights the company is granting to the employee hereunder are not exclusive and relate solely to a transaction with the prospect. The employee will not receive a commission on transactions closed by the company with any candidates other than a prospect and shall receive a commission only if a transaction with such prospect is closed pursuant to the terms set forth in this agreement." Still quoting from the employment agreement, "This agreement shall remain in effect for an initial term of 90 days, the end date, and for whatever additional term thereafter which may be expressly agreed to in writing between the employee and the company.  The company and the employee acknowledge and agree that if the company and a prospect execute a letter of intent, term sheet, or definitive agreement regarding a transaction prior to the end date, the terms of this agreement shall be extended until the earlier of closing of a transaction between prospect and the company and the cessation of negotiations

7

between the company and prospect regarding a transaction. The company and employee agree that the company's obligation to pay the restructuring fees, as provided in this agreement, shall survive any termination of this agreement, and the company shall remain obligated to pay  the restructuring fee. Any and all actions concerning any dispute arising hereunder shall be filed and maintained only in the state or federal court sitting in the State of Michigan," end quote.

And, again, it's important to note that the language -- the last sentence talking about a continuation of the employment agreement, there's a condition precedent in the paragraph, and that is that there's a pending transaction, and there's no other way to read that.  Certainly the obligation to pay doesn't exist as a freestanding condition. The precondition, of course, is that there be a pending transaction. If there's a pending transaction, the company remains obligated to pay regardless of the fact that the actual written agreement may have expired.

On August 9th, 2012, debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, and it isundisputed that the claimants in this case, Mr. Zaitzeff and Mr. Ghei, did considerable work prior to the filing of the bankruptcy petition and for a short period after the petition was filed seeking to find an investor to infuse cash into the debtor to allow the debtor to reorganize. However, those efforts were unsuccessful.

The short-term employment agreement expired by its terms on September 26, 2012. Debtor and the claimants did not enter into another written agreement extending the short term employment agreement.

On May 22nd, 2013, debtor filed an amended disclosure statement, which explained that as of May 22nd, the date of the filing of the disclosure statement, no investor had been found to infuse sufficient capital to allow debtor to reorganize. The disclosure statement stated -- and I'm just quoting this because it's a nice encapsulation of what had happened in the case -- quote, "Also as a part of the Chapter 11 cases, the debtors proposed an initial restructuring plan. Under the initial plan, new capital funding would have been infused from outside investors. That capital was needed to recapitalize the company and its nondebtor subsidiary banks which had been suffering from varying degrees of undercapitalization. As a part of the initial plan, a lead investor would have made a significant equity investment in the company. That investment would have rendered the initial plan feasible and likely resulted in its confirmation. However, the lead investor ultimately decided not to proceed with its investment. When other investors could not be found, the initial plan was withdrawn." And that's a quote from the disclosure statement filed on May 22nd, 2013, at pages 21 and 22.

On July 16, 2013, the debtor filed an amended joint liquidating plan. Article 8-A of the amended plan provided as follows. In paragraph (a) it discussed assumed contracts and leases. Quote, "The filing of this plan constitutes a motion by the debtors to assume as of the effective date all executory contracts and unexpired leases to which either of the debtors is a party except for any executory contract or  unexpired lease that prior to the effective date, one, has been assumed or rejected pursuant to final order of the Court; two, previously

8

expired or terminated pursuant to its own terms; three, is expressly rejected or terminated by the terms of the plan; or, four, is the subject of a separate then pending motion filed under Section 365 of the Bankruptcy Code by the debtors. The confirmation order shall constitute an order of the Court under Section 365 of the Bankruptcy Code approving the assumption of all such executory contracts and unexpired leases as of the effective date." That's the end of the quote from Section 8(a).

On January 29th, 2014, this Court confirmed the debtor's plan of reorganization. The plan was confirmed as a liquidating plan, and it provided for a sale of the debtor's remaining assets to Talmer Bancorp, Inc.

On March 19th, 2014, the claimants, Michael Zaitzeff and Vikaran Ghei, each filed a claim for $750,000. The claim sought payment of those claims as an administrative expense claim. The claimants alleged that they were entitled to payment of these claims as an administrative expense claim pursuant to 11 U.S.C., Section 503, and 11 U.S.C., Section 507(a)(2).

On April 15th, 2014, debtor filed an objection to the claims of Mr. Zaitzeff and Mr. Ghei. The objection to claim is scheduled for hearing on June 3rd, 2014. Because of the ruling I'm issuing today, that hearing is going to be unnecessary.

On May 22nd, 2014, Mr. Zaitzeff and Mr. Ghei filed a motion seeking limited discovery regarding their claims. On May 27, 2014, the debtor filed a response objecting to any discovery.

The Court finds that Zaitzeff and Ghei are not entitled to any discovery because there is no issue of fact regarding their claims. Excuse me. The short-term employment agreements, the disclosure statement, and the plan are unambiguous in their terms, and those terms state clearly that Zaitzeff and Ghei do not have a claim for compensation.  Zaitzeff and Ghei had short-term pre-petition employment agreements with debtor. Those agreements expired by their own terms on September 26, 2012. The agreements could have been extended, but any extension had to be in writing. There are no facts to support an argument that the agreements were extended beyond September 26, 2012. While it is true that Zaitzeff and Ghei were working diligently at the time the case was filed to find investors to provide capital to the debtor, those efforts were unsuccessful. Even if there was some evidence that the short-term employment agreement had been extended, some parol evidence or some other evidence, the employment agreement provided that Zaitzeff and Ghei's right to compensation was contingent upon the, quote, "successful execution of an equity capital raise," end quote.

The claimants were unsuccessful in obtaining an investor to purchase the equity or infuse cash into the debtor.  Therefore, by the terms of the short-term employment agreement, the claimants are not entitled to compensation.

The claimants' claims are based in part on their argument that debtor assumed the employment contracts in debtor's plan of reorganization. However, the claimants have no facts to support this argument, the argument that the

9

employment agreements were assumed. Their employment agreements terminated on September 2012 -- on September 26, 2012. They didn't find an investor. Those were the preconditions to payment. You either had to have an extension of the employment agreement and you had to have an investor. Neither of those things happened. Article 8 of the plan expressly stated that debtor was not assuming any contract, which had expired pursuant to its own terms prior to confirmation. Since debtor's plan did not assume the expired employment agreements, all Zaitzeff and Ghei's other arguments about the administrative status of their alleged claim must fail.

The Court notes that to the extent the employment agreement ever used the words, quote, "administrative expense," unquote, or talked about an obligation to pay, those terms were mentioned in the paragraphs that stated that payment to the claimants was contingent upon their finding an investor to make an equity capital infusion into the debtor.  The claimants -- oh, if these -- as Mr. Sable pointed out, if the claimants had found an investor, at that point there might be an argument about the status of their claim or the  amount of their claim, but they failed to find an investor , and all their arguments about the statuses of claims are a moot point.

The claimants also -- well, they attempt to circumvent the fact that they were unsuccessful in finding an investor to infuse sufficient capital into the debtor to allow for a traditional reorganization by arguing that, quote, "The sale of certain subsidiary banks during the course of this Chapter 11 case included equity capital raises for the debtor's subsidiary banks," and that's -- end quote. That statement is made at paragraph 12 of the claimants' motion for discovery.

The claimants misstate the facts. During the case of debtor -- during the course of debtor's Chapter 11 case, debtor sold all the subsidiary banks which were not taken over by the FDC to third-party purchasers. Those third-party purchasers were buyers, not investors. Many of the purchasers after the purchase went through were required to infuse cash into the purchased bank to satisfy capital requirements of the FDIC, but those cash infusions were the benefit of -- for the benefit of the pur They infused the capital in order to comply with the requirements of the FDIC so that they could continue to operate the banks and make money on their purchase. An equity capital raise allows debtor to retain its assets. As a matter of both fact and law, the sale of debtor's subsidiary banks is not an equity capital raise which would trigger an obligation to pay Zaitzeff and Ghei.

In conclusion, this Court finds that the claimants do not have a claim against the debtor for compensation because, one, their employment agreements were pre-petition employment agreements, which expired on September 26, 2012, and, two, any payment was contingent on the claimants finding an investor to infuse cash into the debtor to allow the debtor to reorganize and retain its assets. Zaitzeff and Ghei did not find such an investor; therefore, they did not satisfy the conditions necessary to obtain payment.

The short-term employment agreements and debtor's plan and disclosure statement are unambiguous in their terms. There is no language in those

10

documents which supports Zaitzeff's and Ghei's claims. There is no discovery which could alter the unambiguous terms of the documents or demonstrate that Zaitzeff and Ghei were successful in obtaining an equity capital raise which provided an infusion of cash into the debtor to allow the debtor to retain its assets and reorganize. Since discovery is an exercise in futility, Zaitzeff's and Ghei's motion for discovery is denied. They have not established cause for the discovery.

The motion is denied. And, as I've indicated to the parties, the Court is ruling on the objection to claim, sustaining the objections to both claims. It was the nature of the discovery motion that I was required to analyze the nature of the claims, and in reaching my conclusions about discovery, the basis for my conclusion is that the objection -- the debtor's objections to the claims have merit. The agreements are all unambiguous, and the objection to claim is sustained.

There will be no hearing on Tuesday, June 3rd. Thank you very much.

(5/30/14 Hrg. Tr. at 27-40).

## STANDARD OF REVIEW

"In a bankruptcy proceeding, the bankruptcy court is the finder of fact." *In re Isaacman*, 26 F.3d 629, 631 (6th Cir. 1994). "On appeal from the judgment of the bankruptcy court, a district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard but reviews *de novo* the bankruptcy court's conclusions of law." *Id.* (Citations omitted).

## APPLICABLE LAW AND ANALYSIS

In this appeal, Claimants challenge the bankruptcy court's order disallowing their claims. Claimants contend that the bankruptcy court erred in ruling against them "by making three critical errors:"

First, the Bankruptcy Court incorrectly ruled that the [ ] Employment Contracts were not assumed, despite clear language to the contrary in the Confirmed Plan. Second, the Bankruptcy Court mis-identified the contingencies that give rise to the payment of the Restructuring Fee. Third, the Bankruptcy Court improperly concluded that the correct contingencies for payment were not met, despite numerous prior admissions by the Debtor and plan contract language to the contrary.

(Claimants' Br. at 11). In addition, Claimants assert that the bankruptcy court violated their due

11

process rights by failing to give them adequate notice that the court would be hearing the claims objections at the May 30, 2014 hearing, instead of at the hearing that had been scheduled for June 3rd. (*Id*. at 22).

As explained below, this Court concludes that the bankruptcy court was correct in ruling that: 1) the Employment Contracts expired by their terms and were not assumed in the Debtor's plan of reorganization ; 2) payment of the Restructuring Fees was contingent upon Claimants finding an investor to infuse cash into the Debtor to allow it to reorganize and retain its assets; and 3) that contingency was not met.  In addition, this Court rejects Claimants' due process argument for lack of merit.

## I.    The Employment Contracts Assumed Expired By Their Terms On September 26, 2102 And Were Not Assumed.

Both of the Employment Contracts at issue were executed on June 28, 2012, and provided that they "shall remain in effect for an *initial term of ninety (90) days (the "End Date")* and for whatever additional term thereafter which may be expressly agreed to in writing between the Employee and the Company."  (Emp. Agmts. at 2) (emphasis added).  The bankruptcy court made a factual finding that the Debtor and Claimants did not enter into other written agreements after June 28, 2012 (*see* 5/30/14 Hrg. Tr. at 33) and Claimants have not suggested otherwise. The Employment Agreements both expired, by their terms, on September 26, 2012 (ie., 90 days after June 28, 2012).

As the Debtor notes, that the Employment Agreements expired on September 26, 2012 is significant for several reasons.  Most importantly, because the Employment Agreements terminated before the February 3, 2014 effective date of the Debtor's confirmed plan, they were incapable of assumption at the time of plan confirmation.  *See Counties Contracting and Const.*

12

*Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d Cir. 1988) ("Once the contract is no longer in existence, the right to assume it is extinguished.  A contract may not be assumed under § 365 if it has already expired according to its own terms.  2 Collier on Bankruptcy ¶ 365.04.").

In addition, as Judge McIvor noted in ruling on the claims, the confirmed plan expressly stated the Debtor was not assuming any contract which expired pursuant to its own terms prior to confirmation.

As explained below, the contingency that had to be met before payment was required simply never occurred.  Moreover, Claimants' argument about the provision stating the right to receive payment survives termination of the agreement does not help Claimants under the facts that exist here.  Judge McIvor explained that the provision speaking about a continuation in the employment agreement only applies if there was a pending transaction when the agreement was set to expire:

> And, again, it's important to note that the language -- the last sentence talking about a continuation of the employment agreement, there's a condition precedent in the paragraph, and that is that there's a pending transaction, and there's no other way to read that.
> Certainly the obligation to pay doesn't exist as a freestanding condition. The precondition, of course, is that there be a pending transaction. If there's a pending transaction, the company remains obligated to pay regardless of the fact that the actual written agreement may have expired.

(5/30/14 Hrg. Tr. at ).  Judge McIvor found that while Claimants had done some work trying to find an investor to infuse cash into the Debtor to allow it to reorganize, those efforts were unsuccessful and there was no pending transaction with a prospect when the agreements expired on September 26, 2012.

Accordingly, this Court rules that the Employment Agreements expired by their terms on September 26, 2012.

## II.     The Contingencies That Would Give Rise To Payment Of The Restructuring Fees Were Not Met.

The Bankruptcy Court concluded that even if the Employment Agreements had somehow been extended beyond September 26, 2012, that would not help Claimants because the agreements expressly provided that their right to compensation was contingent upon the "successful execution of an equity capital raise" and "[C]laimants were unsuccessful in obtaining an investor to purchase the equity or infuse cash into the debtor."  (5/30/14 Hrg. Tr. at 36).  That is, the right to payment was "contingent on the claimants finding an investor to infuse cash into the debtor to allow the debtor to reorganize and retain its assets" and Claimants "did not find such an investor; therefore, they did not satisfy the conditions necessary to obtain payment."  (*Id.* at 37 & 39).

This Court agrees with the Bankruptcy Court's  analysis and conclusion.  This is an additional reason to affirm the Bankruptcy Court's order disallowing the claims.

## III.    Claimants' Due Process Rights Were Not Violated.

During the May 30, 2014 hearing, Counsel for Claimants objected to the Court ruling on the objections to their claims before the June 3, 2014 hearing that had been scheduled:

| | |
|---|---|
| THE COURT: | Well, as I indicated to Mr. Sable, if you have anything more to say regarding the debtor's objection to the claims, I suggest you make that argument right now. |
| MR. MCCORMICK: | Okay.  Your Honor, I mean I just feel like that they should be allowed the due process of the full preparation and presentation of the claims objection – of their objection to the claim objections at the hearing on the 3rd. |
| THE COURT: | I completely understand your argument, but you have briefed the issue, and in the context of this discovery motion, it's – it doesn't disadvantage your clients.  Your clients asked for discovery, and in order to evaluate whether or not they're entitled to discovery, there was simply no way for the Court to address that issue without |

14

> addressing the underlying issue of the claims. They're
> inextricably linked . . . by requesting discovery in a
> contested matter, you have to show cause. In order to show
> cause, you have to establish to me that there's some basis
> for their claim, and so in this context I cannot rule on the
> discovery without ruling on the claims. I just can't. So I
> would – if you have anything else to say, I'd like you to go
> ahead and say it.

> MR. MCCORMICK: Your Honor, I think that, you know, *we've hashed it out. I
> think your ruling is going to be clear. I don't think
> anything I'm going to say is going to change that* . . .

(5/30/14 Hrg. Tr. at 26-27) (emphasis added). Claimants' Counsel then went on to argue why

the claims should be allowed before Judge McIvor ultimately gave her rulings and disallowed

the claims.

Claimants now assert that Judge McIvor violated their due process rights by improperly

holding a hearing on the Debtors' objections to their claims without adequate notice or time to

prepare. (Claimants' Br. at 22). Claimants assert that the bankruptcy court failed to give them

"adequate time to prepare [their] defenses and argument for the May 30 hearing." (*Id.* at 25).

Notably, however, their brief does not apprise the Court of the *remedy* they seek for this alleged

due process violation. Their conclusion asks the Court for only the following relief:

> For the foregoing reasons, Appellants seek (1) reversal of the Bankruptcy Court's
> order disallowing their proofs of claim in the Debtor's bankruptcy case, (2)
> reversal of the Bankruptcy Court's order holding that the Debtors' subsidiary
> banks did not receive an equity capital raise over the course of the Debtor's
> bankruptcy case, (3) reversal of the Bankruptcy Court's order stating that the
> Modified Employment Contracts were not assumed under the Debtors' Plan, and
> (4) an order directing the Bankruptcy Court to allow the Employee Claimants'
> proofs of claims as allowed administrative claims with priority.

(*Id.* at 25).

In cases where an appellate court concludes that the bankruptcy court failed to give a

15

party an adequate opportunity to present evidence at a hearing, the remedy is to reverse the decision and remand with instructions for the bankruptcy court to hold a hearing. *See, e.g.*, *In re Morton*, 298 B.R. 301, 309 (6th Cir. B.A.P. 2003) ("We reverse the decision of the bankruptcy court overruling Debtor's Objection with respect to Claims No. 2, 4, 6, and 9 and remand with instructions to provide Debtor with an opportunity to present evidence.").

Moreover, under the circumstances presented here,  the June 3rd hearing was not going to be an evidentiary hearing in any event, because both parties took the position that the agreements were unambiguous and should be construed in their favor.  Thus, Claimants' brief does not assert that they were unable to present evidence at the June 3rd hearing.  Rather, they assert that they did not have adequate time to prepared *the arguments* they presented to the bankruptcy court because they had to make those arguments on May 30, 2014, instead of on June 3, 2014, two business days later.

But Claimants do not ask this Court to remand with instructions for the bankruptcy court to reconsider its ruling after giving Claimants another opportunity for oral argument.

This Court rejects Claimants' assertion that the bankruptcy court violated their due process rights by hearing oral argument on the objections to the claims at the May 30, 2014 hearing.

If a claim is made and an objection to that claim is then made, "the court, after notice and a hearing" shall determine the amount of such claim.  11 U.S.C. § 502(a) & (b).  "As defined in the Bankruptcy Code" the phrase "after notice and a hearing:"

> (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if–

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

11 U.S.C. §102(1).

"Due process mandates that there be an opportunity for some kind of hearing before a person is finally deprived of his or her property, and that such hearing occur at a meaningful time and in a meaningful manner.  The contours of due process are flexible, however, and the requirement of a hearing is limited to that which is appropriate to the nature of the case." *In re Morton*, 298 B.R. 301, 306 (6th Cir. B.A.P. 2003) (citations omitted).  In the bankruptcy setting, due process "requires that notice be given to a creditor whose property rights are being affected so that the creditor may have its day in court." *In re Marcus Hook Dev. Park, Inc*., 143 B.R. 648, 660 (Bankr. W.D. Pa. 1992).

Under the circumstances presented here, Claimants cannot credibly assert that they were not "given their day in Court."  Before the bankruptcy court ruled, both parties were given a full and fair opportunity to present their positions in writing as to the claims and the objections to them asserted by the Debtor.  Moreover, it was Claimants' own motion for discovery, which Claimants sought to have heard on an expedited basis, that caused the bankruptcy court to consider the merits of the claims prior to the June 3, 2014 hearing that had been scheduled.  Thus, Claimants counsel should have been prepared at the May 30, 2014 hearing to discuss the merits of the claims and the objections to them.

In addition, Claimants have not identified any argument or defense that, had they been

17

allowed to argue the same issues again on June 3rd, could have possibly persuaded Judge

McIvor to change her analysis or her conclusion.  As Claimants' counsel stated at the May 30th

hearing, the parties had "hashed it out,"  "I think your ruling is going to be clear," and " I don't

think anything I'm going to say is going to change that."  (5/30/14 Hrg. Tr. at 26-27).  Thus, the

Debtor's argument that Claimants cannot show any harm from the alleged due process violation

(*see* Debtor's Br. at 15) is well taken.

### CONCLUSION & ORDER

For the reasons set forth above, this Court AFFIRMS the bankruptcy court's order

disallowing the claims.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  December 8, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on
December 8, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager